GILLENDER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. EMINENT DOMAIN—CLOSING STREET—COMPENSATION—RIGHT OF ABUTTING OWNER—"PRIVATE PROPERTY."

An owner of property abutting on a public street has a right therein entitling him to have the same continued as a public street for the benefit of his property, and this right constitutes an easement in the bed of the street, which attaches to the abutting property and is "private property," within the meaning of the Constitution, of which the owner cannot be deprived without compensation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 104.

For other definitions, see Words and Phrases, vol. 6, pp. 5577–5578; vol. 8, p. 7764.]

2. MUNICIPAL CORPORATIONS — STREETS — VACATION—WHEN TITLE VESTS AND INTEREST BEGINS RUNNING.

Street Closing Act, Laws 1895, p. 2037, c. 1006, adequately provides for the compensation and payment to abutting owners, but does not fix the time when title shall vest in the city, or when it may enter on, invade, or destroy the easements taken, nor fix a time from which interest shall run; and hence title will not vest until confirmation of the report of the commissioners of estimate and assessment, and interest will only run from the date of the report, as provided in the street opening act, to which the street closing act alludes.

3. SAME—INJUNCTION.

While a street becomes legally closed on the adoption of the appropriate resolutions by the board of estimate and apportionment under Street Closing Act, Laws 1895, p. 2037, c. 1006, this does not destroy a private easement, so as to permit it to be physically invaded; and as the proceedings may take considerable time, and as there seems to be no provision for compensation during such time, the obstruction of a street before confirmation of the report of the commissioners would result in the appropriation by the city of private property without due compensation and may be enjoined pending confirmation of such report.

Appeal from Special Term.

Suit for injunction by Jessie Gillender against the city of New York. From an order refusing to vacate an injunction pendente lite, defendant appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Francis K. Pendleton, Corp. Counsel (Theodore Connoly, of counsel, and John F. O'Brien, on the brief), for. appellant.

Seth B. Robinson (Charles De Hart Brower, of counsel), for respondent.

CLARKE, J. The plaintiff is the owner in fee simple of certain property lying on both sides of Twelfth avenue, and extending from 151st street to 152d street, in the borough of Manhattan, city of New York. One parcel lies between the easterly line of Twelfth avenue and the westerly line of the land occupied by the Hudson River Railroad, being a strip 11 feet 10 inches wide, on the north side of 151st street, 208 feet 4½ inches long, to the south side of 152d street, where the strip is 17 feet 3¾ inches wide. Immediately opposite said land, on the westerly side of Twelfth avenue, she owns a lot, piece, or parcel of land, or water lot, or vacant ground and soil under water, to be made land, extending from 151st street to 152d street, about 345 feet in depth, together with all the right of wharfage and cranage thereunto belonging or in any wise appertaining. In the papers upon which an injunction pendente lite was granted plaintiff alleges that she has rented the said property to seven different tenants for dwelling, business, and other purposes; that it is valued by her at $150,000; that the only means of access to said premises from the rest of the city is 151st street, a public highway laid out as such more than 20 years ago; that to the east of said premises, and between said premises and Broadway, the public drive and parkway, as an extension of Riverside Drive to Boulevard Lafayette, is now being built; that the plan as adopted by the city for said public drive and parkway provided for an archway under said drive at 151st street, so as to leave said street open and unobstructed; that on the petition of certain property owners the local board of improvement of Washington Heights and the board of estimate and apportionment have voted to change the said parkway, by omitting the said archway at 151st street and closing said street, and that defendant is about to close said street; that plaintiff appeared before said boards and protested against the closing of 151st street under said change of plan until some other means of access to her said premises should be furnished by the defendant; that the defendant has refused to provide other means of access to said premises, has taken no steps to acquire the plaintiff's property by eminent domain or otherwise, and that the closing of 151st street, by removing all access to the premises from the rest of the city, will compel plaintiff's tenants to remove from said premises, and will render said premises practically worthless for all purposes; and she prayed for an injunction restraining the defendant from closing 151st street until it provided other suitable access to the premises of the plaintiff from the rest of the city.

The plans and photographs exhibit the intention of the city to physically obstruct 151st street by an impassable barrier 18 or 20 feet high. The motion for the preliminary injunction was granted by the Special Term, the learned court stating:

"It seems to me that if it was designed, as it is stated by the defendant, that this is a part of an extensive plan of public improvement in the section of the city referred to, then it is incumbent upon the city to take such steps as are provided by law to accomplish the desired result. Chapter 1006, p. 2037, of the Laws of 1895, provides the machinery for discontinuing and closing streets. If such a proceeding were taken, plaintiff would have full opportunity to present her claim for compensation for any damage which she may sustain by reason of the discontinuance and closing of the street."

And an order was entered on the 13th day of September, 1905, granting the injunction pendente lite and restraining the defendant from directly or indirectly closing West 151st street, and from changing the plan of the public drive and parkway as an extension, or obstruct said public highway, or from contracting, or permitting the present contractors or other contractors on said parkway, to close or obstruct said public highway pending the final determination of this action or the further order of the court. Thereafter a motion, made returnable on the 2d of July, 1906, was made by the city to dissolve the said injunction. From said motion papers it appears that all of the retaining walls and masonry have been completed on the extension of Riverside Drive from 135th street to 158th street, except the portion of the retaining wall designed to cross the line of West 151st street and a short strip at intersection of 155th street and Riverside Drive extension; that the local board of Washington Heights district and the board of estimate and apportionment had passed a resolution closing West 151st street from a point distant 470 feet westerly from Broadway to the easterly line of Twelfth avenue, and also from the westerly line of Twelfth avenue to the United States bulkhead established by the Secretary of War October, 1890. It also appeared that the corporation counsel had instituted a proceeding for the assessment of damages and compensation therein on account of the closing of West 151st street, had made an application for the appointment of commissioners of estimate and appraisal, that the court had duly appointed such commissioners, and that said commissioners had duly qualified. The learned corporation counsel admits that the original injunction was properly granted, but contends that, after the condemnation proceedings had been begun and a method of compensation granted to the plaintiff, the injunction should have been vacated.

It is an elementary proposition that private property may not be taken for public use without just compensation, and the Constitution so provides (article 1, § 6); and the long line of cases beginning with Story v. New York Elevated Railroad Company, 90 N. Y. 122, 43 Am. Rep. 146, have firmly established the doctrine in this state that an owner of property abutting on a public street has a right or privilege therein which entitles him to have the same kept open and continued as a public street for the benefit of his abutting property, and that this right or privilege constitutes an easement in the bed of the street, which attaches to the abutting property and constitutes private

property, within the meaning of the Constitution, of which the owner cannot be deprived without compensation. Access to the plaintiff's property which abutted upon this public street is taken away by the closing of the street in the manner provided by statute, and will be physically prevented by the erection of a solid stone abutment carrying the Riverside Drive extension when built as contemplated. It appears upon the papers that when the abutment is built the sole access to the plaintiff's property will be by water. If the property to be taken, instead of an easement in the public street, were land necessary for the construction thereof, it could not be physically interfered with, nor could the title thereto vest in the city, unless a sure and certain method of obtaining due compensation were provided. In ordinary street opening proceedings it is provided by section 990 of the Revised Charter (chapter 466, p. 419, of the Laws of 1901), that title shall vest in the city of New York upon the confirmation by the court of the report of the commissioners, and—

"upon the vesting of title, the city of New York or any person or persons acting under its authority, may immediately or at any time thereafter take possession of the same or any part or parts thereof without any suit or proceeding at law for that purpose."

And by section 1001 it is provided:

"All damages awarded by the commissioners of estimate and assessment, with interest thereon from the date of said report, and all costs and expenses which may be taxed, shall be paid by the city of New York to the respective persons and bodies politic or corporate mentioned or referred to in said report, or in whose favor such costs or expenses shall be taxed."

By section 990 thereof it is also provided that:

"Should the board of estimate and apportionment at any time deem it for the public interest that the title to the lands and premises required for any street or park * * * should be acquired by the city of New York at a fixed or specified time, the said board of estimate and apportionment may direct, by a three-fourths vote; where no buildings are upon such lands, that upon the date of the filing of the oath of the commissioners of estimate and assessment * * * or upon a specified date thereafter, and where there are buildings upon such lands, that upon a day not less than six months from the date of the filing of said oath, the title to any piece or parcel of land lying within the lines of any such street or park, shall be vested in the city of New York. * * * In such cases interest at the legal rate upon the sum or sums to which the owners, lessees, parties or persons are justly entitled upon the date of the vesting of title in the city of New York, as aforesaid, from said date to the date of the report of the commissioners shall be allowed by the commissioners as a part of the compensation to which such owners, lessees, parties or persons are entitled."

Here is a complete scheme under which just compensation is provided, not only for the land taken, but for interest upon the value thereof from the time physical interference therewith is permitted by the vesting of title up to the payment of the award. But the matter at bar does not come under the street opening act, nor is any land or tangible property of the respondent to be taken. Her easement is to be destroyed and her property affected and damaged. To accomplish this result legally the city must proceed and has proceeded under the provisions of the street closing act (chapter 1006, p. 2037, of the Laws of 1895). Prior to the passage of this act the effect of the closing of

a street in the city of New York was that public easements in the street were alone extinguished. Private easements therein of the owners of abutting lands of light, air, and access still remained. The object of the statute was to enable the city to destroy, not only the public easements, but the private easements of the abutting owners. Matter of the Mayor, 28 App. Div. 143, 52 N. Y. Supp. 588, affirmed 157 N. Y. 409, 52 N. E. 1126; Matter of Mayor (Vanderbilt Ave.), 95 App. Div. 535, 88 N. Y. Supp. 769.

We have lately had this act under consideration in People ex rel. Winthrop v. Delaney, 120 App. Div. 801, 105 N. Y. Supp. 746, affirmed 192 N. Y. ——, 84 N. E. 1118. In that case a small strip upon one side of Depew Place had been closed by the city authorities, and, the corporation counsel having refused to institute proceedings to ascertain the damages resulting to the premises of the petitioner by said closing, we directed that a mandamus issue to compel the institution of the proceedings. We held that under the statute a right was given to the owners of property to receive compensation where lands, tenements, parcels, or land or premises therein, were taken, affected, or damaged by the discontinuance or closing of any street or part thereof. The said act provides for the appointment by the court of commissioners of estimate and assessment and their method of proceeding. They—

"shall proceed to make a just and true estimate of the compensation which should justly be made for any loss and damage to the respective owners, lessees, parties and persons respectively entitled in possession, reversion remainder unto or interested in any land, tenements, hereditaments or premises, easements, rights, or interests taken, affected, damaged, extinguished or destroyed by or in consequence of the discontinuance or closing of any street, avenue, road, highway, alley, lane or thoroughfare, or any part of any street, avenue, road, highway, alley. or thoroughfare, described in said petition, and also of the benefit and advantage to the land, tenements, hereditaments and premises which shall be benefited by said discontinuance or closing, and to report thereon to said Supreme Court without unnecessary delay. * * * The damages which may be allowed. by the said commissioners as aforesaid and all expenses incurred in the proceedings to ascertain said damages shall be assessed by the said commissioners upon the property benefited thereby to the extent of the benefit so received in the same manner as assessments for acquiring land for streets, avenues, public squares and places in such city are assessed as provided by existing laws relating thereto in such city. * * * And such report when so confirmed by said court shall be final and conclusive as well upon such city as upon the owners, lessees, and the persons and parties interested in and entitled unto the lands, tenements, hereditaments and premises mentioned in the said report, and also upon all other persons whomsoever. * * *

"Sec. 11. All damages awarded by the commissioners of estimate and assessment, * * * shall be paid by such city to the respective persons, * * * mentioned or referred to in the report of the said commissioners. * * * Said damages, costs and expenses shall be paid from the fund provided for by existing laws for the opening of streets and parks in such cities and in the case of the city of New York from 'the fund for street and park openings in the manner now provided for by existing laws. The court * * * upon the application of any person or persons to whom awards shall be made in such proceedings, * * * in case of the failure of the comptroller or chief financial officer of such city to pay the same within thirty days after demand therefor, shall require and direct the principal financial officer or comptroller to pay said awards, * * * from such fund and enforce said order or man-

date in the same manner as other orders or mandates of said court are enforced."

Here, then, is a complete scheme for ascertaining the just compensation to be made, and adequate provision for enforcing the payment of the amount so awarded. The act does not, however, fix the time when the title shall vest, or when the city may enter upon, invade, or destroy the easements taken; nor is there any provision fixing a time from which interest shall run. It would seem to follow, therefore, that title would not vest until the confirmation by the court of the report of the commissioners, and interest would only run from the date of the report as provided in the street opening act, to which the street closing act alludes. While the street becomes legally closed upon the adoption of the appropriate resolutions by the board of estimate and apportionment, this does not destroy a private easement so as to permit it to be physically invaded. As the proceedings may take a considerable time, and as there seems to be no provision for compensation during the time of the running of the proceedings, to allow such a physical deprivation of rights as that contemplated here, before confirmation of the report, would result in the appropriation by the city of private property without due compensation.

It therefore follows that the order appealed from refusing to vacate the injunction pendente lite heretofore issued was right, and should be affirmed, with $10 costs and disbursements, without prejudice to the renewal of the motion upon confirmation of the report of the commissioners.

INGRAHAM, LAUGHLIN, and HOUGHTON, JJ., concur.

SCOTT, J. I concur in result, because in this particular case the way attempted to be closed is in effect a way of necessity.